*Case to stand for trial.*

CHARLES A. HOWES *vs.* INHABITANTS OF MIDDLEBOROUGH

In May 1861, before the St. of 1861, *c.* 222, the inhabitants of a town voted that, feeling it their duty to encourage the raising of a company of volunteers therein, they would guarantee to all the members of the company, citizens of the town, the pay of twenty-six dollars per month "while in service;" and at the same time voted to furnish "each citizen volunteer soldier" with a uniform, if the state should not, and pay him a daily sum while drilling, and that, "when the company of volunteer citizens of this town are called into service, they shall have one month's pay in advance." *Held*, that the guaranty of monthly pay had reference only to service under the authority of the United States, and was not ratified by the St. of 1861, *c.* 222, for any period beyond ninety days after the statute took effect.

CONTRACT to recover pay under a vote of the town of Middle-borough for ninety days' service in 1861 as a soldier. The statute of limitations was not pleaded. The case was submitted to the judgment of the superior court, and of this court on appeal, upon a statement of facts in substance as follows:

The town of Middleborough on May 6, 1861, at a meeting appropriately called and legally held, passed the following votes:

"*Voted*, that, feeling it our duty to encourage the raising of a company of volunteers in this town, we will guarantee the pay of all members of said company, citizens of this town, twenty-six dollars per month while in service.

"*Voted*, that the town guarantee to furnish each citizen volunteer soldier (if the state does not) with a uniform which shall not cost over ten dollars for each volunteer, and pay them one dollar and twenty-five cents per day, when called upon for drill, not to exceed three days in a week for four weeks.

"*Voted*, that, when the company of volunteer citizens of this town are called into service, they shall have one month's pay in advance."

The plaintiff was a citizen of the town, and on May 7, 1861, by signing a certain paper, became a member of a volunteer company in the militia of the Commonwealth of Massachusetts, in that town, and remained a private in that company until mustered into the service of the United States August 24, 1861.

On May 13, 1861, the governor of the Commonwealth, by general order, ordered that no more volunteers be organized, except such as should enlist under an agreement as follows: " We, the undersigned, by our signatures hereto annexed, do severally agree to serve as members of the Massachusetts Volunteer Militia in the Army of the United States as volunteers for the term of three years, unless sooner discharged, from the date of our being mustered into said service in accordance with the terms of the Proclamation of the President of the United States, May 3, 1861."

Afterwards, and before May 21, 1861, the plaintiff and others signed such an agreement. On that day the plaintiff and seventy-eight others petitioned the governor for liberty to organize a company of infantry; and the governor, by special orders,

granted the prayer of the petition, and directed an election of officers of the company to be had at Middleborough on the next day, and the company, when organized, to be attached, as Company F., to the Third Regiment, Second Brigade, and First Division of the Massachusetts Volunteer Militia. Under these orders, officers were elected and commissioned by the governor, and the company organized and attached accordingly; and the plaintiff was and continued a member thereof, and as such under such officers was drilled and exercised in military manœuvres at Middleborough for several days before July 15 following; and he, and each other member of the company who was a citizen of Middleborough, received from the town pay for such drilling, and a uniform, according to the second vote above quoted.

At a meeting of the company in Middleborough in the last part of May or the first part of June 1861, the selectmen, being a committee of the town, gave the plaintiff and other members of the company notice that the vote of May 6 could not be carried out in full, on account of the act of the legislature passed May 23, (St. 1861, *c.* 222,) that no member of the company was under any obligation to the town to go into the United States service, and that if they wished to leave they had a legal right so to do.

By an order of the governor, dated June 25, 1861, the company was designated as Company D, Eighteenth Regiment of Massachusetts Volunteers, and all the service of the plaintiff as a soldier thereafterwards was as a member of said company, both in Massachusetts and at the seat of war.

On July 15, 1861, the company, including the plaintiff, left Middleborough as an organized company, and under an order of the governor went into a camp of rendezvous at Readville in the county of Norfolk. While in camp at Readville, on July 26, the plaintiff with others took an oath of allegiance to the United States, and on July 30 the plaintiff, with other members of the company who were citizens of Middleborough, (having given notice to the town that they had taken such oath,) each received from the town the sum of $15, and signed and gave to the town a receipt therefor in these terms: '' Received of the town of Mid-

dleborough the following sums against our names, it being one month's advance pay. July 1861."

The plaintiff with the other members of the company remained in the camp at Readville under military orders until August 24, 1861, when the company, the plaintiff being also continuously a member thereof, was regularly mustered into the service of the United States for the term of three years unless sooner discharged, and soon afterwards left Massachusetts for the seat of war, and remained in the United States service for three years and until the expiration of the term of service.

In September 1861 the plaintiff, as a private in said company, together with other members thereof, each received from the Commonwealth of Massachusetts the sum of $19.80, and signed his name to a roll, headed " Pay-roll, Company D, in the Eighteenth Regiment of Massachusetts Volunteers," certified by the captain of the company to be in every particular correct, and showing that this sum was for wages at the rate of $11 a month for fifty-four days, from June 30 to August 24.

The said sums of $15 and $19.80 were all that were received by the plaintiff for military service rendered before August 24, 1861, except what he received from the defendants for drilling and exercising in military manœuvres at Middleborough as before mentioned.

*J. Brown & J. C. Sullivan*, for the plaintiff.

*E. Robinson*, for the defendants.

GRAY, J.   We are of opinion that the vote passed by the town of Middleborough near the beginning of the war of the rebellion, to guarantee the payment, to each member of the company of volunteers to be raised in the town, of " twenty-six dollars per month while in service," was intended to apply only to the period of their military service under the authority of the United States. Any doubt as to the true construction of this vote in this respect is removed by referring to the votes passed at the same meeting (which have been fully carried into effect) " to furnish each citizen volunteer soldier with a uniform " and to pay him while drilling, and that " when the company of volunteer citizens of this town are called into service, they shall have one month's pay in advance."

Until August 24, 1861, the members of that company, even after their organization under the orders of the governor, and while they were in the camp of rendezvous at Readville, were still only part of the militia of the Commonwealth; for, having been neither called out by the President as militia, nor mustered into the service of the United States as soldiers, they were in no sense in the national military service. Sts. 1861, *cc.* 49, 219. *Houston* v. *Moore*, 5 Wheat. 1. *Martin* v. *Mott*, 12 Wheat. 19. *Tyler* v. *Pomeroy*, 8 Allen, 480. As the date of their muster into that service was more than three months after the St. of 1861, *c.* 222, was passed and took effect, the vote was in excess of any lawful authority of the town, and this action cannot be maintained. *Grover* v. *Pembroke*, 11 Allen, 88. *Curtis* v. *Pembroke*, Ib. 92.

It may be added that the plaintiff and his associates do not appear to have considered themselves as in the service, within the meaning of these votes, before they had entered the military service of the United States; for during the period between June 30 and the day of their muster into that service, they received pay from the Commonwealth, as authorized by the St. of 1861, *c.* 218; and they did not claim from the town the month's advance pay, promised by its last vote, until they had taken a formal oath of allegiance to the United States, which was probably, though erroneously, supposed to constitute a beginning of that service.

There is nothing in the cases on which the plaintiff relies which can control our judgment in the present case. In *Grover* v. *Pembroke*, 11 Allen, 88, the vote sued on expressly covered the time while the plaintiff was "in the military service of the state of Massachusetts." In *James* v. *Scituate*, Ib. 93, the question principally considered was whether a man who, after the passage of a vote "to pay to each volunteer soldier raised in this town and being an inhabitant therein, and mustered into the service of the United States for the defence of the government," enlisted in a company of volunteer militia, and then, upon being informed that it could not be received as a company, voluntarily enlisted and was mustered into a regiment of volunteers in the United States service, was within the meaning of the vote; and

it was held that he was. The including, in computing the amount of the judgment in that case, of the period of twenty-five days which elapsed between the original enlistment into the militia and the muster into the service of the United States, was inadvertent and inaccurate; for by the very terms of the vote the pay from the town was not to begin until the soldier was " mustered into the service of the United States."

*Judgment for the defendants.*