———o———

STATE OF MISSOURI *ex rel.* EZEKIEL LINDLEY, Plaintiff in Error, *vs.* GEORGE CLARK, STATE AUDITOR, Defendant in Error.

1. *State Auditor may refuse to issue warrants, although certified by another officer, when.*—The Auditor may, in the exercise of a sound discretion, refuse to issue a warrant, although certified to by another officer of the State, except where the law makes such certificate conclusive upon him.

2. *Account and certificate as to revocation.*—As to whether the Governor having certified to the correctness of an account, can revoke his indorsement *quære?*

3. *Mandamus–Fugitive from justice—Offer of reward by Governor not conclusive of what facts.*—In *mandamus* against the State Auditor, to compel the issue of a warrant for the amount of reward offered by the Governor for the apprehension of a fugitive from justice, the fact that at the time of the arrest, the proclamation offering the reward was unrevoked, is not conclusive proof of the fact that the person arrested was at the time a fugitive.

*Error to Cole County Circuit Court.*

*Hockaday, Attorney General,* for Plaintiff in Error.

I. The Auditor being the general accountant of the State, and responsible for the manner in which its funds are disbursed, is not concluded by the certificate of the Governor, from going behind his indorsement of a claim, and passing independently upon its allowance. (Wagn. Stat., 1333, § 10; id., 1334, § 13; State vs. Hinkson, 7 Mo., 353; Morgan vs. Buffington, 21 Mo., 549; State *ex rel.* vs. Thompson, 41 Mo., 13; State *ex rel.* vs. McMurtry, 37 Mo., 176.)

II. For the purposes of investigation into the legality and justness of claims presented for his official action, the Auditor is clothed with judicial authority, and can issue subpœnas, and compel the attendance of witnesses and examine them in relation thereto. (Wagn. Stat., 1337, § 26.)

III. The Governor had the right to revoke his approval of the claim. The first indorsement was made under a misapprehension of the facts. And the presentation of the certificate to the warrant clerk, who had no legal power to act in the premises, in no sense deprived the Governor of his authority over the paper. Only the Auditor, or his chief clerk, could audit the claim, and, before they acted upon it, the Governor could withdraw it. (Wagn. Stat., 1334, §§ 14, 15; see also, People *ex rel.* vs. Hatch, 19 Mo., 290.)

*Johnson & Botsford, and H. Clay Ewing,* for Respondent.

· I. After the claim with the Governor's certificate had been deposited in the office of the defendant in error, to enable him to draw a warrant thereon, the power of the Governor over it ceased, and it was the duty of the defendant in error to draw the warrant, notwithstanding the subsequent revocation of the Governor. (Wagn. Stat., 1119, §§ 22, 23; Marbury vs. Madison, 1 Cr., 49; Martin vs. Mott, 12 Wheat., 19; Hodley vs. Mayor, 33 N. Y., 603; *Ex parte* Randolph, 2 Brock., C. C. R., 472; Bowen vs. Hixon, 45 Mo., 343; State *ex rel.* vs. Draper, 48 Mo., 215; Boone Co. vs. Todd, 3 Mo., 140.) The Auditor was not acting in this case under his general powers, but under a special statute, and he was conclusively bound by the certificate of the Governor who is invested with full power and control over the matter of rewards.

II. Thompson testified at the close of his testimony, that he was authorized to receive accounts. The law would infer this from his employment in the Auditor's office, and presentation to Thompson was a presentation in law to Clark.

III. The State Auditor is not a clerk or subordinate of the Governor, but is an independent officer, created by law, and whose duties are pointed out and defined by statute. (Wagn. Stat., 1119, § 23; Marbury vs. Madison, *supra*.)

IV. The action of Governor Fletcher in issuing a proclamation, was in the nature of an adjudication that Fisher was a murderer and a fugitive from justice, which cannot be dis-

puted collaterally against the relator, and the proclamation still continuing in force, and not having been recalled by the Governor, the fact that the Morgan county sheriff may not have performed his duty, cannot affect the relator's right to a warrant for his services under said proclamation. (Martin vs. Mott, *supra*.)

V. The statute provides that " the Governor on the production of such certificate shall certify the amount," and evidently contemplates that the only evidence to be brought before him is the sheriff's certificate, and that being satisfied of the genuineness of the signature and certificate of that officer, nothing remains but to give the certificate.

NAPTON, Judge, delivered the opinion of the court.

As there is no discrepancy between the witnesses in this case, the facts may be stated as follows : In 1866, in the month of February, the Governor of the State issued a proclamation reciting that four persons named were guilty of murder ; that they had all fled from justice and were still at large, a reward of $300 was offered for the apprehension of any one of them, and a delivery to the sheriff, and a particular description of each fugitive was appended to the proclamation.

On the 14th of April, 1873, more than seven years after the date of this proclamation, the relator appeared at Jefferson City, and going into the office of the Secretary of State, requested of the chief clerk a copy of this proclamation, which was furnished. The relator had a certificate from the sheriff, made in accordance with the statute (Wagn. Stat., 1119, § 23), of the delivery to him of one of the fugitives described in the proclamation. An account was prepared by a clerk in the office against the State for $300, on the same paper which contained the certificate of the sheriff, and at the request of the relator, the clerk took this account into the office of the Governor and presented the account and certificate to him, who inquired if the proclamation had been issued, and upon being informed that it had, indorsed below the account, "correct. Silas Woodson." Upon a return to the Secretary's office

the relator signed his name on the back of this paper thus certified by the Governor, according to the custom prevailing in the Auditor's department, and the clerk took said paper into the Auditor's office and handed it to a warrant clerk in that office and requested him to issue a warrant. This clerk was busy at the time and requested the clerk from the Secretary's office to come in after dinner—the above transaction having occurred about 11 o'clock in the morning.

Afterwards, and during the same morning, the Governor's Private Secretary called at the Auditor's office, and upon being informed that the Governor had approved a warrant for the relator, requested that the warrant be withheld until the Secretary could see the Governor, and thereupon the clerk took the paper to the Governor's office, and the Governor said he would revoke the order, and he did so by indorsing on the paper the words: "The above certificate is hereby revoked, Silas Woodson, April 14, 1873."

When the Auditor returned after dinner to the office, the paper was presented to him in this shape, and after an examination into the facts, he refused a warrant.

The facts agreed on by the attorneys on both sides are that "at the time of the arrest of said Fisher, (the person named in the proclamation of 1866) he was in Morgan county, Missouri, (the venue of the offense) where he had been indicted before the proclamation of Governor Fletcher, and had resided openly in said Morgan county for at least one year before his arrest—that such residence was all that time known to the sheriff of Morgan county, and he could have been at any time arrested by said sheriff of Morgan county."

The circuit court, to whom an application for a *mandamus* on the Auditor was made, ordered the *mandamus*, and a writ of error has brought in review the decision of that court.

The statute under which this claim originated is as follows:

Sec. 22. If any person charged with or convicted of a felony, shall break prison, escape or flee from justice, and ab-

scond or secrete himself, the Governor of this State may. if he deem it expedient, offer any reward not exceeding $300, for the apprehension and delivery of such person to the custody of such sheriff or other officer, as he may direct.

Sec. 23. When any person shall apprehend and deliver such fugitive to the proper sheriff or officer, he shall take his certificate of such delivery, and the Governor, on the production of such certificate, shall certify the amount of the claim to the State Auditor who shall draw on the State treasury for the same. (Wagn. Stat., 1119.)

It was determined at a very early day by this court, (State vs. Hinkson, 7 Mo., 353) that it was the right of the Auditor of Public Accounts to reject a claim presented against the State, although certified to him by another officer of the government authorized by law to give such certificate, and this conclusion was adopted in a case where the Speaker of the House and the clerk had certified the account of a member in conformity to a statute which required such certificate, and which authorized the Auditor to allow the claim on the presentation of such certificate. (Morgan vs. Buffington, 21 Mo., 550.) And the same doctrine was maintained, where a judge of a court and the clerk had certified to a bill of costs, as they were required to do by law. (State ex rel. Daly vs. Thompson, 41 Mo., 13.) The only exceptions to this rule seem to be where the legislature expressly make the certificate of some other officer conclusive.

The Auditor is expressly authorized to examine the parties and witnesses, on oath or affirmation, on any point material to any matter touching an account presented, and for that purpose is invested with the power of issuing subpœnas and compelling the attendance of witnesses, in the same manner and by the same means as is allowed by law to courts of record. (Wagn. Stat., 1337, § 26.)

We may assume then, for the purpose of this case, that the certificate of Gov. Woodson was in support of the claim—but we would not be understood by this to intimate that the Governor could not recall his first written approval. That would

depend on circumstances. The case of Marbury vs. Madison (1 Cranch) is essentially different from this. In that case the President had completed a commission to Mr. Marbury, signed it, and had the seal of the State affixed in the Secretary's office, where it was left to be delivered to the officer commissioned. The only thing wanting was delivery, and the court held that the President had completed the appointment and could not recall it. Whether the signature of the Governor to an account, without any action upon it by the officer who was entrusted by law with the final disposition of the subject could not be withdrawn before such other officer had acted on it, and before in fact it was presented to him, is a question somewhat different from the one decided in Marbury · vs. Madison. The President of the United States possessed the exclusive power of appointments to office in the case referred to, and the Secretary of State had no revision over the acts of the president. The certificate of the Governor, in the case now under consideration, is one of the steps essential to a presentation of the account to the Auditor, but not by any means conclusive on the Auditor. A change of opinion by the Governor then, evidenced by his formal revocation of his first approval, is a very different matter from an attempt to recall a commission to an officer, which he alone is authorized to appoint. It might be said that the matter had not yet passed from the control of the Governor until it was acted on by the Auditor, or at least until it was actually presented to the Auditor for his action.

But it is unnecessary to give any opinion on this point. The only question is, whether the facts now agreed on, and which are doubtless the same which were established to the satisfaction of the Auditor, authorized him to reject the claim.

It is insisted by the counsel for the claimant that the action of Gov. Fletcher, in issuing his proclamation, was in the nature of an adjudication that Fisher (the person arrested) was a felon and a fugitive from justice; and that the proclamation still continuing in force when the arrest took place,

these facts cannot now be denied. The case of Martin vs. Mott, (12 Wheat., 19), is cited to sustain this position. In that case the act of Congress of 1795, passed in pursuance of the constitutional provision, giving Congress the power to provide for calling forth the militia, authorized the President whenever the United States should be invaded, or in imminent danger of invasion, to call forth such number of militia of the States most convenient to the place of danger, as he might judge necessary to repel such invasion. This suit was a replevin brought against a deputy marshal for taking the plaintiff's goods under a warrant to collect a fine imposed by a military tribunal, duly organized under this act of 1795, and an attempt was made to show that the exigency provided for in the act had not arisen, and therefore all the acts of the officers' principal and subordinate, were invalid. But the court held that the President was the exclusive judge whether the exigencies had arisen, on which he was authorized to call out the militia, and the acts of all his subordinate officers were justifiable—that no appeal lay from the judgment of the President, nor had any subordinate officer a right to review his decision.

Conceding that this decision is applicable to the action of the Governor of Missouri in issuing a proclamation for a fugitive, the concession would only lead to the conclusion that the propriety of the Governor's action could not be questioned, and it may be further admitted that the proclamation was conclusive, that the persons advertised were indicted as stated, and that they were at its date fugitives from justice, although the Governor may upon these points have been misled by the information he received. But it does not follow from this that the arrest of the persons advertised as fugitives would authorize the payment of the reward offered, if it appeared that at the time of their arrest they were not in fact fugitives from justice, but living openly and notoriously at their usual places of abode, without any concealment, and accessible by the officers of the law at all times. The parties named in the proclamation may have been at its date fugitives from justice.

At the date of the arrest, seven years after the proclamation issued, it is agreed they were not fugitives. The reward is offered to secure fugitives from justice, and not to secure the delivery of a person not a fugitive, and who can be arrested by the sheriff at any time he pleases.

Under this state of facts, we think the reward was not due, and that the Auditor properly refused to allow it.

Judgment is reversed. The other judges concur.