# Betty v. The State.

## Assumpsit.

(Decided November 7, 1914.   67 South.   457.)

1. *Militia; Constitutional Provisions.*—It is competent for the legislature to prescribe the services to be rendered by the state militia.

2. *Same; Pay for Service.*—Section 278, Constitution 1901, sections 7396, 1399-7402, Code 1907, and Acts 1911, p. 670, considered, and it is held that an aide de camp on the Governor's staff had no duties apart from active service, under the Commander-in-Chief, and that travel by the aide when ordered to accompany the governor to the inauguration at Washington, was not compulsory, or in active service, and hence, that he was not entitled to any pay or allowance therefor.

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Assumpsit by the State against Lewis S. Betty. Judgment for plaintiff, and defendant appeals.   Affirmed.

The suit is for the sum of $82 paid to defendant as alleged without authority of law.   The facts agreed upon are as follows:   Defendant is and was a regularly appointed and acting member of the staff of the Governor of Alabama, being an aid-de-camp with the military rank of Lieutenant Colonel.   On February 24, 1913, by direction of the Governor, a general order was issued in terms as follows:

(1) The Governor and his staff will attend the inauguration of President Wilson at Washington, March 4, 1913.   (2) Uniform worn will be full dress.   Mounts will be furnished with saddles, bridles, and saddlecloths

at the stable of J. M. Peaks, 643 New York avenue, N. W., Washington, D. C. (3) Members of the staff are requested to report to the Governor at the Warner House, Washington, not later than the night of March 3d. The travel enjoined is necessary in the military service. By command of the Governor. [Signed by the Adjutant General.]

In response to this order, Col. Betty and the other members of the staff went to Washington and officially took part, along with the Governor, in the ceremonies attending the inauguration. Col. Betty's incidental expense account, duly verified, was approved by the Governor and ordered paid. Thereupon a warrant was issued by the auditor, and in due course paid by the treasurer. On these facts, the trial court rendered judgment for the state.

DANIEL W. TROY, for appellant. The service was active service, and having been ordered by the Governor, the necessity of the service was conclusive.—21 Wis. 621; 66 Am. Dec. 356; 15 L. R. A. 116; 6 L. Ed. 537; Acts 1911, p. 651.

R. C. BRICKELL, Attorney General, for the State. The act relied on does not authorize an expenditure of military funds for journeys beyond the borders of the state, nor could there be any military service in connection with the trip taken out of the borders of the state and to an inauguration.—§ 278, Constitution 1901; §§ 7396, 7399-7402, Code 1907; Acts 1911, p. 670.

SOMERVILLE, J.—Section 278 of the Constitution provides that: "The officers and men of the militia and volunteer forces shall not be entitled to or receive any pay, rations, or emoluments when not in active service."

[Betty v. The State.]

It is competent for the Legislature to prescribe the services to be rendered by the state militia, and it is clear that the constitutional inhibition above quoted is designed to prevent the allowance of pay, or incidental perquisites, except for those actual and specific military services which are prescribed by law; and except for those periods of time when the militia, as a whole, or any of its units or parts, is actively engaged in public military service.

Our statutes prescribe two modes of "active service": (1) The militia may be called out by the Governor "to execute the laws, suppress insurrection, and repel invasion."—Code, § 7396. And, in certain exigencies of riot and disorder, certain civil officer may command the local service of the militia.—Code, §§ 7399—7402. (2) The militia may be annually ordered by the Governor to assemble in arms for the purpose of training them in the arts and discipline of military service in the field. Sections 50-53, Act of April 22, 1911; Sess. Acts 1911, p. 670.

We conceive that a Governor's militia staff can be in "active service" only in connection with the active service of the militia serving in some mode prescribed by law, since the law enjoins upon the staff no separate and independent service "as a staff."

The defendant's theory is that, as a member of the Governor's staff, he is bound under penalty to obey the orders of his commander in chief; and hence that his official attendance upon the Governor at the Washington inaugural was a legally authorized function, and constituted an "active service" within the meaning of the Constitution and laws. The defendant, in support of this theory, relies mainly upon certain provisions of the Militia Act of April 22, 1911, viz.: "Sec. 6. The several staff officers shall perform the same duties as

nearly as the circumstances of the case will permit, as are performed by like staff officers in the United States army, and any and all such duties as may be required of them by the commander in chief."

"Sec. 43. Any officer or enlisted man traveling in obedience to the orders of the Governor shall be paid all actual expenses incurred in the performance of such duty. *　*　*"

Both of these provisions are, however, subject to very obvious qualifications. If the law has not imposed specific duties upon a governor's aid-de-camp, it is evident that he has and can have no duties apart from the active service of the militia forces, commanded by his chief. In a word, his chief acquires jurisdiction over him, with the right to command his actions, only with respect to and in connection with the active service, actual or contemplated, of his troops. Apart from such service, the militia staff officer is a civilian and not subject to military orders or control.

It is equally clear that section 43 contemplates the payment of actual expenses only in those cases where an officer or soldier has traveled under the Governor's orders, in the accomplishment of, or in relation to, some military purpose sanctioned by the statutes, or arising out of the exigencies of active militia service.

But, it is plausibly urged, the necessities of the military service demand unquestioning obedience on the part of a subordinate to the orders of his commander; and a subordinate who thus obeys, without the right to question, must be regarded quoad hoc as being in "active service." And, it is further insisted, the Governor, as commander in chief, having determined that the particular act or action is under the circumstances appropriate or necessary in the military service, his judgment to that effect is conclusive and binding on soldier and civilian alike.

As we have heretofore stated, the general scope and the particular occasions of military service by the militia are fixed by law; and, although in the achievement of these authorized objects the Governor exercises the plenary powers of a commander in chief, we think it must be readily apparent that he cannot, by the mere device of a military order, create new forms and enter new fields of military activity. Such a power, capable of almost infinite abuse, would be incompatible with the spirit of our institutions. Not being expressly conferred by law, the power must be held as denied by necessary implication.

If the Governor can assemble and transport his staff to Washington, to take part in a presidential inaugural, as a military body in the service of and at the expense of the state, there is no reason apparent why he could not, thus accompanied, attend any official function, federal, state, or municipal, wherever it might be staged. And, if the magnitude of the occasion or the liberal fancy of the Governor should prompt it, he might carry with him a brigade. Such extravagant abuses are, of course, only remotely conceivable; but their consideration forcibly negatives any implication of the power of a Governor to indulge in them at the public expense.

It is eminently proper that a state should be officially represented at a national inaugural; but until the Legislature sees fit to delegate that service to the military, or to authorize the Governor to so use it, the discharge of such a function by members of that department, though ordered by the Governor, cannot be regarded as an active military service for the state in any legal sense.

Members of the state militia are not bound to obey palpably unlawful commands; and, in any event, they can claim or receive compensation or emoluments only

when, in accordance with the prescriptions of law or of lawful superior orders, they are engaged in active service for the state.

It cannot be denied that, whenever military action and service are authorized by law on stated occasions at the call of the Governor, a determination by the Governor that such an occasion exists is conclusive of the question, so far as the duty of the militia and their compensation are concerned. In other words, the Governor authoritatively decides whether existing conditions create the occasion specified by the law for his action. —*Chapin v. Ferry,* 3 Wash. 386, 28 Pac. 754, 15 L. R. A. 116, and cases cited in note; *Martin v. Mott,* 25 U. S. (12 Wheat.) 19, 6 L. Ed. 537. But it is clear that this rule of expedience and necessity does not authorize the Governor to create and declare occasions for military action on the ground merely that such action is necessary in the military service—a fallacious paraphrase of the principle as well as the policy of the rules quoted.

It would seem, however, on the soundest principles of reason and justice, that when any branch or any member of the state militia is called to arms and service within the boundaries of the state by the Governor as commander in chief, whether the order does or does not designate a purpose authorized by law, obedience by the soldier is compulsory. He cannot question either the necessity or the propriety of the call, and it follows necessarily that, from the beginning of mobilization to final discharge by the commander, the soldier is in the active service of the state, and entitled to pay or expenses as the law may provide.

It would seem, also, that when a soldier is ordered to do an act which has no relation to the accomplishment of a legitimate object—in short, an act which is outside the scope of legally required or authorized action by

[Betty v. The State.]

the militia or any of its members—and the illegal or unauthorized character of the action clearly appears upon the face of the order, then there is no duty to obey the order and no penalty for its disobedience. A militia man is not an automaton, and the duty to obey a superior officer is bounded by the jurisdiction and authority of the officer who commands him.

It is easy to see that many questions of delicacy and difficulty may arise in this connection, and we are not now attempting to offer a touchstone for their solution. The foregoing observations are designed to supply a basis of principle for the conclusions to which we feel impelled: That there is no authorized service by the state militia beyond the limits of the state; that the order under which defendant acted was in excess of the jurisdiction and authority of even the commander in chief; and that obedience to the order was voluntary and not compulsory.

It follows, necessarily, that the allowance of the defendant's expenses in this behalf was unauthorized, and their payment unlawful.

The judgment of recovery will be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and GARDNER, JJ., concur.