BAKER, Judge
(dissenting):
I agree with the majority opinion that “[t]he due process principle of fair notice mandates that ‘an accused has a right to know what offense and under what legal theory’ he will be convicted; an LIO [lesser included offense] meets this notice requirement if ‘it is a subset of the greater offense alleged.’ ” United States v. Jones, 68 M.J. at 468 (C.A.A.F.2010) (quoting United States v. Medina, 66 M.J. 21, 26-27 (C.A.A.F.2008)). I also agree that “‘[t]he Constitution requires that an accused be on notice as to the offense that must be defended against, and that only lesser included offenses that meet these notice requirements may be affirmed by an appellate court.’ ” Id. at 468 (quoting United States v. Miller, 67 M.J. 385, 388 (C.A.A.F.2009)).
The dispute in this case is threefold. First, is whether the elements test from Schmuck v. United States, 489 U.S. 705, 716-18, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), is the exclusive means by which fair notice may be provided in the military context where offenses charged under clauses 1 or 2 of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006), serve as lesser included offenses. Heretofore, notice has been provided by reference to elements promulgated in the Manual for Courts-Martial (MCM) by the President and through case law. See e.g., United States v. Carr, 65 M.J. 39, 40 (C.A.A.F.2007) (concluding that assault consummated by a battery is a lesser *474 included offense to indecent assault under the MCM); United States v. McKeel, 63 M.J. 81, 82 (C.A.A.F.2006) (upholding conviction for indecent assault as a lesser included offense for rape under the MCM).
Going forward, however, the majority has concluded that in the military “an LIO ... must be determined with reference to the elements defined by Congress for the greater offense.” 68 M.J. at 471. Specifically, the exclusive means of notice regarding lesser included offenses is pursuant to the Schmuck elements test in which: “one offense is not ‘necessarily included’ in another unless the elements of the lesser offense are a subset of the elements of the charged offense.” Schmuck, 489 U.S. at 716, 109 S.Ct. 1443. As a result, because the statutory elements of clauses 1 and 2 of Article 134, UCMJ, of course, do not and cannot line up with any of the enumerated offenses, the majority’s decision means that offenses charged under clauses 1 and 2 of Article 134, UCMJ, can never be lesser included offenses to any other punitive article in the UCMJ, or with respect to clause 3 of Article 134, UCMJ. Additionally, the eighteen enumerated offenses for which the President in the MCM has expressly promulgated lesser included offenses under Article 134, UCMJ,[1] are invalid.[2]
Second, if the statutory elements are the only basis by which an accused may receive fair notice of any lesser included offense, and the statutory elements of Article 134, UCMJ, do not adequately describe any lesser offense within the UCMJ, the majority does not explain how those same elements can provide fair notice of a charged offense under clauses 1 and 2 of Article 134, UCMJ, without resorting to information derived from outside the statutory elements. In other words, by implication the majority’s analysis also challenges clauses 1 and 2 of Article 134, UCMJ, themselves. Nonetheless, the majority does not address this issue, nor does it follow the implications of its analysis to their logical conclusion. However, given the role Article 134, UCMJ, has heretofore played in the structure of military justice and in providing commanders a flexible tool to uphold good order and discipline, this issue should not be left unresolved.
Finally, the majority’s analysis fails to account for the constitutional distinctions between civilian law and practice and military law and practice. In particular, the majority does not address the unique role and place of Article 134, UCMJ, in military discipline, command, and justice and in the context of the President’s independent authority as commander in chief. Whatever one might think of Article 134, UCMJ, the Supreme Court has upheld its use, but only because fair notice of what is criminal is derived from custom, practice, and presidential directive, and not with reference to the legislatively defined elements of the article. See Parker v. Levy, 417 U.S. 733, 751-53, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). It might be better legal policy were the Congress to use its Article I authority to define the elements to each Article 134, UCMJ, offense and each Article 134, UCMJ, lesser included offense, but that is not the same as saying the President does not have the authority to do so as commander in chief. In fact, he has exercised this authority for sixty years under the UCMJ and before that under the Articles of War. Congress has remained silent in the face of such historic practice.

Discussion

The majority concludes that because “[d]e-terminations as to what constitutes a federal crime, and the delineation of the elements of such criminal offenses- — including those *475 found in the UCMJ — are entrusted to Congress,” the only means by which an accused may be placed on fair notice of a lesser included offense (and presumably the greater offense) is through reference to statutorily defined elements. 68 M.J. at 471 (C.A.A.F. 2010). I am skeptical this is a required legal result in the military constitutional context, rather than a legal policy preference for a formulaic test, such as the test set out in Schmuck, over the less certain standard of “fair notice”.
Article 134, UCMJ, does not fit neatly, if at all, into the ordinary framework for construing criminal statutes. First, Article 134, UCMJ, is unique to the military justice system. This is evident with reference to the statutory elements, which address service discrediting conduct and prejudice to good order and discipline. The point is driven home in case law. Parker, 417 U.S. at 748-49, 94 S.Ct. 2647 (recognizing that Article 134, UCMJ, must be gauged by “an actual knowledge and experience of military life, its usages and duties”); United States v. Mason, 60 M.J. 15, 20 (C.A.A.F.2004) (“[The appellant’s] conduct in receiving those images [of child pornography] on his government computer can constitutionally be subjected to criminal sanction under the uniquely military offenses embodied in clauses 1 and 2 of Article 134.”).
Second, Article 134, UCMJ, is intended to provide the commander with the flexibility to provide for the good order and discipline of the armed forces and thus is not just directed toward the punishment of traditional criminal offenses defined by traditional statutory elements. See Parker, 417 U.S. at 745, 94 S.Ct. 2547 (“And to maintain the discipline essential to perform its mission effectively, the military has developed what ‘may not unfitly be called the customary military law’ or ‘general usage of the military service.’”) (quoting Martin v. Mott, 12 Wheat. 19, 35, 6 L.Ed. 537 (1827)); MCM pt. IV, para. 60.-c(2)(a) (2008 ed.) (“[Clause 1] refers only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in a remote or indirect sense.”). For these reasons, Article 134, UCMJ, reaches conduct that would not necessarily be criminal if committed by a civilian. E.g., Parker, 417 U.S. at 739, 760-61, 94 S.Ct. 2547 (holding that making defamatory and provoking statements to enlisted personnel in the hope of convincing them to disobey orders can be criminalized under Article 134, UCMJ); United States v. Rogers, 54 M.J. 244, 256-57 (C.A.A.F.2000) (holding that the prohibition on fraternization with subordinates within appellant’s command was not vague under Articles 133 and 134, UCMJ). It is also intentionally broad so as to address the myriad of actions in the military context that cannot be foreseen, but would nonetheless undermine good order and discipline or bring discredit to the armed forces, like jumping from a vessel or impersonating an officer. This is a critical point.
Congress intended clauses 1 and 2 to be read broadly. Indeed, the two clauses, and their antecedent clauses in the Articles of War, have been read that way throughout more than two hundred years of U.S. military practice. See William Winthrop, Military Law and Precedents 720 (2d ed. Government Printing Office 1920) (1886); Parker, 417 U.S. at 745-56, 94 S.Ct. 2547. In light of the broad language of Article 134, UCMJ, this Court and ultimately the Supreme Court have long held that custom and constructions by military authorities must narrow, and have narrowed, the reach of that language. Parker, 417 U.S. at 753, 94 S.Ct. 2547; see also United States v. Ashby, 68 M.J. 108, 118 (C.A.A.F.2009). Heretofore, the narrowing of the language was usually provided by the President’s promulgation of Article 134, UCMJ, delineated offenses and lesser included offenses. Moreover, where the President, as commander in chief, or his subordinates have reached too far, this Court has not hesitated to say so, consistent with the cautionary injunction of Parker. See, e.g., United States v. Jordan, 57 M.J. 236, 239-40 (C.A.A.F.2002) (concluding that the accused could not be charged with violating Article 134, UCMJ, for leaning on a civilian boat in a marina).
The dilemma, of course, is that because Article 134, UCMJ, is unique to military justice and discipline and was drafted in an *476 intentionally broad manner to give the commander flexibility, it uses generalized statutory elements. The Article 134, UCMJ, elements do not and cannot line up in a literal sense with the statutory elements of the enumerated offenses, which were codified in specific criminal element language.[3] Congress did not intend to do the same with clauses 1 and 2 of Article 134, UCMJ. The general nature of the article’s elements makes it more difficult for servicemembers to ascertain what is and is not criminal under Article 134, UCMJ. Thus, where Article 134, UCMJ, is concerned it is the commander as convening authority, and ultimately the President as commander in chief, who gives meaning to these elements and essentially defines their meaning in context. As a result, Article 79, UCMJ, 10 U.S.C. § 879 (2006), does not address the question as to how the enumerated articles and Article 134, UCMJ, as a lesser included offense relate.
The Congress has left it to the President to define clauses 1 and 2 of Article 134, UCMJ, and heretofore he has done so in a manner that necessarily includes certain conduct under Article 134, UCMJ, as lesser included offenses to enumerated offenses. Binding or not, the commander in chiefs view as to how conduct listed under Article 134, UCMJ, necessarily also implicates service discredit and good order and discipline should be persuasive. It also can provide fair notice as to how clauses 1 and 2 of Article 134 relate to the enumerated articles with regard to lesser included offenses.
Thus, while it is a constitutional truism that only Congress can define crimes, and the elements of crimes, it does not necessarily follow that the President is precluded from giving those elements meaning in the military context where the President acts as commander in chief and Congress has not otherwise expressly precluded such exercise of authority.[4] Nor has the Supreme Court ruled otherwise. Since the UCMJ’s inception, the President has done just that by delineating offenses within Article 134, UCMJ.[5] In defining Article 134, UCMJ, he has also delineated offenses as lesser included offenses for enumerated offenses. That is what Congress intended with respect to Article 134, UCMJ. Schmuck, a 1989 case occurring in a civilian context, did not abrogate this authority either expressly or by implication.
Indeed, the Supreme Court has recognized the President’s authority to narrow the meaning of Article 134, UCMJ, and has validated this practice. Parker, 417 U.S. at 753, 760-61, 94 S.Ct. 2547 (upholding a conviction for making defamatory and provoking statements, which was a sub-offense under Article 134, UCMJ, described in the MCM). Moreover, the Court has insisted upon such practice as a constitutional requirement given the broad statutory elements contained in Article 134, UCMJ. Id. at 752-53, 94 S.Ct. 2547. And, of course, the Constitution in a specified context and the courts more generally recognize that while the Constitution most certainly applies to members of the military it may apply differently depending on the context. Id. at 758, 94 S.Ct. 2547 (“The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that *477 which would be constitutionally impermissible outside it.”); U.S. Const, amend. V (“No person shall be held to answer for a capital ... crime, unless on a presentment or indictment of a Grand Jury, except in eases arising in the land or naval forces....”). Is not the application of Article 134, UCMJ, as a delineated offense or a lesser included offense one of those circumstances?
Recognition of this distinction is particularly compelling in an area where the President and the Congress possess specific and additional constitutional authority over the military instrument that extends beyond the legislative authority to define crimes. Among other things, the Congress has the power “[t]o make Rules for the Government and Regulation of the land and naval Forces.” U.S. Const, art. I, § 8. The President is, of course, the “Commander in Chief of the Army and Navy of the United States,” granting him some measure of authority to maintain good order and discipline within the military. U.S. Const, art. II, § 2. The President’s authority is not limited to Article 36, UCMJ, 10 U.S.C. § 836 (2006), granting the President the power to prescribe “[p]retrial, trial, and post-trial procedures.” If the President’s power were so limited, then he could hardly promulgate the Article 134, UCMJ, offenses listed in the MCM, and Congress would hardly have tolerated and acquiesced to such a practice for sixty years.
To apply the paradigm from Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring), the President’s authority is at its zenith when he acts pursuant to Article 36, UCMJ, because he operates with his own authority as well as that expressly delegated by the Congress. But Article 36, UCMJ, does not purport to extinguish authority the President as commander in chief might otherwise assert over military discipline through operation of Article 134, UCMJ, and the delineation of Article 134, UCMJ, elements in the MCM. Military discipline is an area of concurrent authority between Congress and the President, and therefore Congress’s acquiescence has allowed the President to take on more responsibility in clarifying the meaning of Article 134. Id. at 637, 72 S.Ct. 863.[6] Such acquiescence may be particularly instructive and valid where the President is exercising a parallel constitutional authority.
There is also parallel precedent for such constitutional practice. In the area of foreign affairs, for example, Congress has delegated to the President the authority to define and enforce the criminal sanctions generally authorized by Congress in the International Emergency Economic Powers Act (IEEPA). 50 U.S.C. §§ 1701-1707 (2006). In this foreign affairs context, it is the President who determines to whom, to what, and to where the criminal sanctions will apply. See Dames & Moore v. Regan, 453 U.S. 654, 670-71, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981). Fair notice of these criminal sanctions comes not in the form of statutory elements, but through the vehicles of presidential executive orders and the actions of the Office of Foreign Asset Control (OFAC), as posted on its website.
Of course, the predicate for Presidential action was express in IEEPA; whereas here it is implied, derived as it is from the President’s command authority and Congress’s understanding of and acquiescence in the manner in which that authority has been exercised. That is the difference between what is generally referred to as Category I and Category II of the Youngstown paradigm.[7] But that does not place the *478 President’s action into Category III of the paradigm as the majority implies. Thus, contrary to the majority’s assertion, while Congress alone can legislate crimes and define the elements, it is the President in certain contexts who gives substantive meaning to the general elements of the offense in military practice. Given the nature and importance of the constitutional interests at stake for all three branches, if sixty years of law and practice are to change with regard to the application of Article 134, UCMJ, it should be done on the basis of an exercise of authority more contextually definitive than Schmuck.
In the military context, it would seem that Article 134, UCMJ, might well be fleshed out in the same manner as the crimes under IEEPA are given specific meaning and application, which is to say by the President. This is certainly what has happened to date in both the promulgation of Article 134, UCMJ, delineated offenses and Article 134, UCMJ, lesser included offenses for enumerated offenses. However, the majority has concluded as a matter of constitutional law that while the Congress could delegate this authority to the President it has not done so and Schmuck necessitates the conclusion that the only way to provide fair notice of a criminal offense is through the promulgation of legislative elements. 68 M.J. at 470, 472. Moreover, in the view of the majority, the President’s authority as commander in chief is merely persuasive, or more accurately, unpersuasive, notwithstanding the President’s exercise of this authority in concert with Congress’s Article I authority since 1951. Nor does the majority explain what has happened between 1989, when Schmuck was decided, and today that would change this Court’s approach to Article 134, UCMJ, lesser included offenses.
That is not to say that it would not be better for Congress to define the elements of every Article 134, UCMJ, offense if it were possible to do so. Nor does it mean that it would not be better for Congress to expressly delegate its authority to the President to define criminal conduct as it has done with IEEPA (or for that matter expressly precluding the President from doing so). Certainly, from the standpoint of authority, the President acts with more certain strength when he acts with the express will of the Congress and his own authority. That is the first category of the Youngstown paradigm. Here the President acts in the gray zone of Category II of Youngstown.
In either zone the President’s authority as commander in chief is not unlimited and unchecked. The President cannot make rape a lesser included offense of forgery. Clauses 1 and 2 of Article 134, UCMJ, must be read, interpreted and applied in a manner consistent with Congress’s exercise of its Article I authority and this Court’s interpretation of the Constitution and other law. But the President’s authority does factor into the analysis. Clauses 1 and 2 of Article 134, UCMJ, are meaningless without it.
In short then, the majority has determined, based on Schmuck alone, that the only manner in military practice by which constitutional notice of a lesser included offense can be provided is through application of a literal statutory elements test. As a result, all offenses in the military that were heretofore predicated on Article 134, UCMJ, as lesser included offenses to enumerated offenses are invalid and will remain so unless Congress provides delineated Article 134, UCMJ, offenses with statutory elements that align with the enumerated offenses. This Congress cannot do if it intends for clauses 1 *479 and 2 of Article 134, UCMJ, to serve as a flexible commander’s tool addressing good order and discipline and service discrediting conduct as delimited by the commander in chief.
Of course, for that same reason, the majority’s decision puts in doubt the application of Article 134, UCMJ, itself. If statutory elements are the only means by which an accused might receive fair notice of a lesser included offense; then why are statutory elements not the only means by which an accused might receive fair notice of any offense. Article 134, UCMJ, does not provide such notice. Rather, the practice, custom, case law, and the commander in chiefs directives provide notice of what is criminal under Article 134, UCMJ. Parker, 417 U.S. at 751-53, 94 S.Ct. 2547. “Decisions of this Court during the last century have recognized that the longstanding customs and usages of the services impart accepted meaning to the seemingly imprecise standards of [Articles] 133 and 134.” Id. at 746-47, 94 S.Ct. 2547.
The effect of these constructions of Arts. 133 and 134 by the Court of Military Appeals and by other military authorities has been twofold: It has narrowed the very broad reach of the literal language of the articles, and at the same time has supplied considerable specificity by way of examples of the conduct which they cover.
Id. at 754, 94 S.Ct. 2547. However, under the Court’s reasoning today, as a matter of logic it appears that custom, practice, and ease law cannot provide fair notice; only the elements will do. Thus, unless one finds specific notice in the actual statutory text of Article 134, UCMJ, that conduct is criminal it would seem to falter for the same reason that Article 134, UCMJ, delineated offenses cannot be lesser included offenses for enumerated offenses.

Conclusion

In this case, Appellant was charged with rape, but found guilty of indecent acts with another. Given that I have concluded the President has the authority to delineate offenses under Article 134, UCMJ, as lesser included offenses to the enumerated offenses, indecent assault was a lesser included offense of rape. At the time of Appellant’s court-martial, committing an indecent act was a possible lesser included offense of indecent assault, both of which were delineated under Article 134, UCMJ. In this case, the facts fit and Appellant, by his own trial admission, was on fair notice that committing an indecent act was a lesser included offense of rape through operation of Article 134, UCMJ. Therefore, I would affirm the decision of the United States Air Force Court of Criminal Appeals and respectfully dissent.

. MCM pt. IV, paras. 18.d(l)(f), 18.d(2)(d), 18.-d(3)(c) 19.d(2)(a), 30a.d, 32.d(l)(b), 35.d(2)(c), 36.d, 38.d(l)(d), 38.d(2)(b), 40.d(l), 41.d(l)(b), 41.d(2)(a), 43.d(2)(c), 43.d(3)(c)-(d), 44.d(l)(c)-(d), 44.d(2)(b), 45(d)(1)(b), 47.d(6), 49.d(l), 51.-d(2)(b), 53.d(l), 55.d(2), 56.d(l) (2008 ed.).

. By the same reasoning, the majority has also eliminated the issue of multiplicity and claims of preemption for clauses 1 and 2 of Article 134, UCMJ, without comment. Further, if clauses 1 and 2 of Article 134, UCMJ, are no longer lesser included offenses for any enumerated offense, the government may well address evidentiary contingencies by charging a violation of clauses 1 and 2 of Article 134, UCMJ, in every case in which it charges a violation of an enumerated offense.

. "[Ujnlike federal offenses, military offenses are not exclusively the product of statutes. Countless military offenses derive their elemental essence from regulations or orders, from customs of service, or from traditional military crimes that have emerged from a military common law-like process.” United States v. Weymouth, 43 M.J. 329, 335 (C.A.A.F.1995) (citing Article 134, UCMJ).

. In United States v. Foster, this Court read into the enumerated offenses legislative text that was not there, namely implied elements for good order and discipline. 40 M.J. 140, 143 (C.M.A. 1994), overruled in part by United States v. Miller, 67 M.J. 385, 389 (C.A.A.F.2009). An Article 134, UCMJ, lesser included offense is different. The President as commander in chief gives meaning to Article 134, UCMJ, as the Supreme Court and Congress intended, and indicates where an offense under Article 134, UCMJ, might serve as a lesser included offense to an enumerated offense.

.Arguably, the President’s duty to "take care that the Laws be faithfully executed” is also implicated, for in the absence of congressional enumeration, there is no other way to give meaning to the Article 134, UCMJ, elements without executive implementation. U.S. Const, art. II, § 3.

. See United States v. Rorie, 58 M.J. 399, 411 (C.A.A.F.2003) (Effron, J., with whom Baker, J., joined, dissenting) (noting that since Congress did not act when the Department of Defense submitted comprehensive legislation that did not address abatement, it ”provide[d] additional grounds for concluding that the proponents of changing our interpretation of the UCMJ have not surmounted the hurdle imposed by the doctrine of stare decisis”).

. In Justice Jackson’s concurrence in Youngstown, he laid out three categories of how presidential power may be viewed depending on congressional action. Youngstown, 343 U.S. at 635-38, 72 S.Ct. 863. In Category I, "[w]hen the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum, for it includes all that he possesses in his own right plus all that Congress can delegate.” Id. In Category II:
*478 [w]hen the President acts in absence of either a congressional grant or denial of authority, he can only rely upon his own independent powers, but there is a zone of twilight in which he and Congress may have concurrent authority, or in which its distribution is uncertain. Therefore, congressional inertia, indifference or quiescence may sometimes, at least as a practical matter, enable, if not invite, measures on independent presidential responsibility.
Id. at 637, 72 S.Ct. 863. Finally, in Category III, “[w]hen the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter.” Id.